SLIP OPINION

Cite as 2016 Ark. 231

# SUPREME COURT OF ARKANSAS

No. CV–15–965

| | |
|---|---|
| CHRIS TAFFNER AND ANITA TAFFNER<br><br>APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND N.T., A.T., B.T., K.T., and J.T., MINORS<br>APPELLEES | **Opinion Delivered** June 2, 2016<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV-2015-10-3]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from the termination of parental rights of appellant, Chris Taffner, and separate appellant, Anita Taffner, of their five adopted children. N.T., A.T., B.T., K.T., and J.T. Appellee, the Arkansas Department of Human Services (DHS), initiated dependency neglect proceedings and ultimately termination of parental rights proceedings.

Chris and Anita Taffner are the adoptive parents of five children who came to their home through foster-care services and were adopted in 2009 and 2011 respectively. On January 2, 2015, DHS removed the children from the home as a result of allegations that Chris had sexually abused one of his children. Also on January 2, 2015, Chris was arrested for sexual abuse. On January 5, 2015, DHS filed an emergency custody and dependency-neglect petition. On January 7, 2015, the circuit court entered a probable-cause order and declared both Chris and Anita indigent and appointed separate counsel for each. In the petition and supporting affidavit, DHS asserted that the children were dependent-neglected

as a result of abandonment, abuse, sexual abuse, sexual exploitations, neglect or parental unfitness. Further, the supporting affidavit stated that DHS had received credible statements during an ongoing sexual-abuse investigation from one of the children that their father was the alleged offender and the children were in imminent danger if they remained in the home. Additionally, the affidavit stated that the investigation was initiated after a report was received at the child-abuse hotline that the adoptive father, Chris, was alleged to have sexually abused one of the children. Further, the affidavit stated that the adoptive mother, Anita, stated that she did not believe the children's statement and was "100% supportive of her husband," and if it came down to choosing between her husband and her children, she would choose "[her] husband of course."

On February 18, 2015, the circuit court conducted an adjudication hearing. At the hearing, the parties agreed to the following stipulation of facts:

> The parties agree to a finding of dependency-neglect as to B.T., A.T., K.T., N.T., and J.T., based upon the following stipulated facts: that the five children were previously in foster care and were adopted by Chris and Anita Taffner; that father, Chris Taffner, was arrested for rape and sexual assault in the second degree, three counts, in Washington County Criminal Case Number CR 2015-16-6; B.T. is named as one alleged victim in those proceedings; that the Arkansas State Police Crimes Against Children Division has found true against Chris Taffner with B.T. as victim for sexual contact, oral sex, and sexual penetration. That the criminal charges are pending and are currently set for trial on April 3rd, 2015. That mother, Anita Taffner, continues to live with Chris Taffner as his wife. Mother has articulated to DHS and to CACD that she believes and supports her husband, and that based upon the foregoing, the children cannot return to either parent at this time.

At the hearing, DHS brought witnesses to the adjudication hearing to prove its allegations, and following the circuit court's acceptance of the stipulation, requested that the witnesses be released. However, the circuit court retained the witnesses to take testimony

to establish clear and convincing proof of aggravating circumstances. At the conclusion of the hearing, the circuit court announced its finding that Chris had sexually abused the children and that there was clear and convincing evidence of aggravated circumstances. Neither Chris nor Anita objected to this finding or appealed it. Also on February 18, 2015, the circuit court entered an order finding by clear and convincing evidence that the five children were dependent–neglected:

> [A]fter considering evidence presented at this hearing, that these additional allegations . . . are true and correct. Specifically, . . . based on uncontroverted credible testimony . . . the court finds: B.T. and K.T. were subjected to AGGRAVATED CIRCUMSTANCES due to sexual abuse: B.T. and K.T. were sexually abused by Chris Taffner. The court makes this finding by clear and convincing evidence. Ms. Taffner, Mother, is not protective of the children.[1]

---

[1]With regard to aggravating circumstances, both parents assert that the circuit court sua sponte raised the aggravating circumstances in this case. However, the petition and supporting affidavit both specifically provided the sexual–abuse allegations. Ark. Code Ann. § 9-27-303 defines sexual abuse. Further, Ark. Code Ann. § 9-27-311 provides in pertinent part, as follows:

(e)(1) The petition shall set forth the following in plain and concise words:

(A) The facts that, if proven, would bring the family or juvenile within the court's jurisdiction;
(B) The section of this subchapter upon which jurisdiction for the petition is based;
(C) The relief requested by the petitioner; and
(D) If a petition for delinquency proceedings, any and all sections of the criminal laws allegedly violated.

(2)(A) The petition shall be supported by an affidavit of facts.
(B) A supporting affidavit of facts shall not be required for delinquency, paternity, or termination of parental rights petitions.

(C) The supporting affidavit of facts shall include known information regarding the fitness of the noncustodial parent to be considered for custody, placement, or visitation with the juvenile.

On May 19, 2015, DHS filed a petition to terminate Chris and Anita's parental rights, citing as grounds the circuit court's finding that Chris had abused B.T. and K.T., that Anita had not protected the children, that she still remained in the home, and that she had refused to submit to a psychological evaluation. Anita responded that the adjudication hearing was not a "meaningful" hearing, it was in violation of her due-process rights, and she had not been afforded effective assistance of counsel. Anita also filed a motion requesting that the circuit judge recuse from the case because "this Court's conduct has raised a reasonable apprehension of bias." The circuit court denied this motion.

On June 29, 2015, Chris filed a pro se "Motion for a New Lawyer" in which he requested that the circuit court appoint him new counsel. In his motion, Chris argued that his counsel had not adequately represented him in the adjudication hearing, asserting that counsel was not prepared for the hearing, that counsel had not called witnesses or made any attempts to investigate the claims against him, and that counsel had not informed Chris of his right to appeal the order. On June 30, 2015, his appointed counsel filed a motion to withdraw as counsel, stating that she and Chris "have a significant difference in strategy and tactics to defend this matter." The circuit court granted counsel's motion to withdraw as counsel and appointed new counsel but did not make findings on Chris's ineffective-

---

(D) If the petition for dependency-neglect is filed by the department, the supporting affidavit of facts shall include a list of all contact the department has had with the family before the filing of the petition, including without limitation hotline calls accepted for maltreatment, investigations, and open cases.

Here, the record supports that the petition complied with the statute.

4

assistance-of-counsel allegations.

On August 14, 2015, the circuit court held a hearing on the petition to terminate parental rights. Prior to the hearing, Anita filed a "Motion for a Finding that the Adjudication Hearing was not a Meaningful Hearing" in which she again contended that the adjudication hearing was not meaningful, it violated her due-process rights, and her counsel was ineffective. The attorney ad lidem and DHS both objected to Anita's motion, and the circuit court stated that they would each have ten days based on the Rules of Civil Procedure to respond to the motion and would not rule on the motion at that the hearing. Following the hearing, the circuit court entered an order terminating Chris and Anita's parental rights. Additionally, the court denied Anita's motion on the adjudication hearing, finding that "the adjudication hearing was, in fact, a meaningful hearing, as both defendants were represented by counsel and had full opportunity for cross-examination of witnesses - an opportunity of which they did avail themselves." The court further recognized that the adjudication order had not been appealed. Chris and Anita both filed timely notices of appeal from the termination order.

From the termination order, Chris and Anita appealed to the court of appeals. On March 17, 2016, we accepted certification of this case. On appeal, Chris presents one issue: Chris was denied his right to effective assistance of counsel when his appointed counsel at the adjudication hearing, and the ineffectiveness of his appointed counsel, tainted the remainder of the dependency-neglect proceedings such that the termination of his parental rights was a foregone conclusion. On appeal, Anita presents three issues: (1) Anita was

denied effective assistance of counsel; (2) the circuit court erred when it improperly refused to recuse itself; and (3) the circuit court erred when it deprived Anita of her Sixth Amendment right to confront witnesses.

## I. *Standard of Review*

In cases where the issue is one of termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004); *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). On appellate review, this court gives a high degree of deference to the trial court, which is in a far superior position to observe the parties before it. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Further, pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015), an order terminating parental rights must be based upon clear and convincing evidence. *See also Larscheid v. Ark. Dep't of Human Servs.*, 343 Ark. 580, 36 S.W.3d 308 (2001). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499

SLIP OPINION

(2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins*, 344 Ark. 207, 40 S.W.3d 286. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 351–52, 201 S.W.3d 391, 398–99 (2005).

## II. *Points on Appeal*

### A. Ineffective Assistance of Counsel

Because Anita and Chris both present claims of ineffective assistance of counsel, we will address the claims together.

Prior to the termination hearing, Anita and Chris both asserted they had received ineffective assistance of counsel at the adjudication hearing. In her August 13, 2015 motion, Anita contended that, among other things, she did not have a meaningful hearing because she was not provided time to conduct discovery, received ineffective assistance of counsel, including counsel's failure to inform her of her right to appeal the adjudication order, and counsel's failure to object to hearsay statements on which the circuit court erroneously based its ruling upon. Likewise, in his June 29, 2015 "pro se motion for a new lawyer," Chris contended his counsel was ineffective alleging that she did not adequately represent his interests, did not investigate, did not prepare, and did not inform him of his rights to appeal. At the termination hearing, Chris again asserted that he received ineffective assistance of counsel because his counsel did not inform him of his right to appeal the adjudication order.

In her oral argument to the circuit court, Anita asserted that she had received ineffective assistance of counsel, "the adjudication hearing was not a meaningful hearing, and was not advised of the right to appeal." Chris joined in this argument asserting that he did not receive a meaningful hearing and received ineffective assistance of counsel.

At the August 14, 2015 hearing, the circuit court stated in its ruling from the bench

Now, we weren't going to get into this Motion that Mr. Kezhaya filed, Separate Defendant Ms. Taffner's Motion for a Finding that the Adjudication Hearing was not a Meaningful Hearing, but he brings it up in his closing statements, so I'm going to go ahead and respond to it now. He argues in his closing statement that the adjudication was not a meaningful hearing because the attorney did not do discovery for his client, Ms. Taffner, that the attorney for Ms. Taffner did not make proper objections, that the attorney for Ms. Taffner did not advise Ms. Taffner of her right to appeal. Mr. Taffner, his now attorney Ms. Tosh who's here today, also joins in those same objections that the adjudication hearing was not a meaningful hearing, and that his attorney at the time, Ms. Betsy Finocchi, was an ineffective attorney for Mr. Taffner and that Mr. Taffner was not advised to his right to appeal by Ms. Finocchi, that he had ineffective counsel. Now, based upon the Adjudication Order from February 18th, 2015, both mother and father had attorneys that had been appointed for them. Both of their attorneys were present, mom's attorney at the time, Sarah Williamson, dad's attorney at the time Betsy Finocchi. There was testimony at that hearing of Detective Bret Hagen, the Washington County Sheriff's Office detective. Karis Chastain testified, the child abuse center – – CACD investigator. And based upon the testimony, I adjudicated the children, all five of them, to be dependent–neglected. Both Mr. and Ms. Taffner's attorney had full opportunity to cross examine all the witnesses and did so. That hearing went on for a really, really long time. They had right to attorneys. Free attorneys were appointed to them. They had the right for discovery with – – that was something they could have done. The attorneys did make objections throughout that hearing, whether or not Mr. Kezhaya and Ms. Tosh think they were proper objections or not. That's not for me to decide. Obviously, there's a transcript. And as far as whether or not their attorneys advised them of their right to appeal, I don't know what they talked about in private with their lawyers. I find that the adjudication hearing was a meaningful hearing.

Further, in its September 11, 2015, termination order the circuit court stated,

The Motion filed by . . . Attorney for [Anita] . . . requesting that this court

find that the adjudication hearing in this case was not a meaningful hearing is denied. The Court finds that the Adjudication hearing, was, in fact, a meaningful hearing and both defendants were represented by counsel and had full opportunity for cross-examination of witnesses – an opportunity of which they did avail themselves. The court further finds that the adjudication order was not appealed.

In *Jones v. Arkansas Dep't of Human Services*, 361 Ark. 164, 190–91, 205 S.W.3d 778, 794–95 (2005), we declined to address an ineffective-assistance-of-counsel claim in a termination-of-parental-rights proceeding. Nonetheless, the *Jones* court went on to say, "Because of the similarities in termination proceedings and criminal cases, we adopt the standard for ineffectiveness set out in *Strickland*." However, in *Jones*, the court did not reach the merits of the claim:

> Notwithstanding our holding today that, as a matter of law, the right to counsel in termination cases includes the right to effective counsel, we must decline to issue any ruling as to whether Appellant's counsel was ineffective in this case. In short, Appellant failed to raise the issue of [the first attorney's] ineffectiveness and failed to fully develop the facts and circumstances surrounding her claim. Accordingly, we will not reach the merits of this point on appeal.

*Jones*, 361 Ark. at 190–91, 205 S.W.3d at 794–95.

Turning to the issue presented, Chris and Anita assert that they received ineffective assistance of counsel, which ultimately led to the termination of their parental rights. Stated differently, but for counsel's alleged ineffectiveness, their parental rights would not have been terminated. However, based on the record before us, like Jones, Chris and Anita did not develop their ineffective-assistance-of-counsel claims, present evidence or testimony regarding the ineffectiveness, and failed to fully develop the facts and circumstances surrounding their claim. Regarding counsel's ineffectiveness, the circuit court specifically stated "That's not for me to decide" and ruled only on the meaningfulness of the hearing. Further, based on the

record before us, neither parent requested clarification or additional ruling specifically on the ineffectiveness arguments. Pursuant to Rule 60 of the Arkansas Rules of Civil Procedure, the circuit court may set aside or modify an order within 90 days "to prevent the miscarriage of justice. . . ." However, here, the record demonstrates that neither party pursued relief pursuant to Rule 60.

As explained in *Jones*, we "will not consider a claim of ineffective assistance of counsel as a point on appeal unless the issue was first raised in the trial court and the facts and circumstances surrounding the claim were fully developed in the trial court. *See Ratchford v. State*, 357 Ark. 27, 159 S.W.3d 304 (2004); *McClina v. State*, 354 Ark. 384, 123 S.W.3d 883 (2003); *Chavis v. State*, 328 Ark. 251, 942 S.W.2d 853 (1997)." *Jones*, 361 Ark. at 191, 205 S.W.3d at 794. "The rationale behind this rule is that an evidentiary hearing and finding as to the competency of appellant's counsel by the trial court better equips this court on review to examine in detail the sufficiency of the representation." *Kanig v. State*, 321 Ark. 515, 515–16, 905 S.W.2d 847, 847 (1995) (internal citations omitted). Accordingly, where the issue of ineffective assistance is raised by a defendant but the trial court does not rule on it, we will not address it on appeal. *Dodson v. State*, 326 Ark. 637, 934 S.W.2d 198 (1996).

In *Chavis*, 328 Ark. at 253–54, 942 S.W.2d at 854, we reiterated our holding in *Dodson*:

> As this court noted in *Dodson*, the "deemed denied" provision of Rule 4(c) does not apply to appeals from Rule 37 petitions. Although this appeal is from the denial of a posttrial motion for new trial, rather than from the denial of a Rule 37 petition, the "deemed denied" provision of Rule 4(c) is similarly inapplicable to this case. *Id*. The reasons for the necessity of an actual ruling and fully developed facts are the same in both instances, as this court explained in *Dodson*:

Such a deemed ruling necessarily precludes any consideration by the trial court of the relevant facts pertaining to the claim. As the trial court is in the best position to evaluate trial counsel's performance and competency, an order reciting its findings is necessary to enable us to conduct a meaningful review of the claim. *Id*. at 644, 934 S.W.2d at 202.

In the case at hand, Appellant has failed to present us with a sufficient order from which to consider his allegation of trial counsel's ineffectiveness. Thus, based upon our holding in *Dodson*, we affirm as to this point.

Here, as in *Chavis* and *Dodson*, the circuit court did not have a hearing on the ineffectiveness claim or make any specific rulings regarding counsel's effectiveness. Therefore, there is nothing for this court to review with regard to the ineffectiveness claims. Like *Dodson*, the circuit court did not rule on the issue of ineffective assistance of counsel, and we recognized this requirement in termination appeals in *Jones*. Accordingly, we do not reach Chris and Anita's ineffectiveness–assistance–of–counsel claim because the circuit court did not rule on it.[2]

---

[2]The dissenting justices separately state that the claims were developed and ruled upon. Justice Danielson's dissent states:

I would hold that the ineffective-assistance-of-counsel claims were developed and ruled upon and that we can reach them on appeal.

This statement is not supported by the record. In fact, the record unequivocally states that a ruling was not made when the circuit court stated:

That's not for me to decide.

Yet, both dissents claim there is a ruling on the issue. This court must have a ruling to perform its review. "When a circuit court does not provide a ruling on an issue, it is an appellant's responsibility to obtain a ruling to preserve the issue for appeal. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116." *Meador v. Total Compliance Consultants, Inc.*, 2013 Ark. 22, 5, 425 S.W.3d 718, 721 (2013). Still glaringly absent from the dissenting opinions is the "ruling" that this court must analyze and review. On countless occasions we have explained:

> It is well settled that this court will not consider ineffective assistance as a point on direct appeal unless that issue has been considered by the trial court. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998); *Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996); *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995); *Sumlin v. State*, 319 Ark. 312, 891 S.W.2d 375 (1995); *Missildine v. State*, 314 Ark. 500, 863 S.W.2d 813 (1993).  Additionally, the facts surrounding the claim must be fully developed, either during the trial or during hearings conducted by the trial court. *Willis*, *supra*; *Dodson v. State*, 326 Ark. 637, 934 S.W.2d 198 (1996). The reason for this rule is that an evidentiary hearing and finding as to the competency of appellant's counsel by the trial court better equips the appellate court on review to examine in detail the sufficiency of the representation. *Willis*, *supra*; *Reed v. State*, 323 Ark. 28, 912 S.W.2d 929 (1996). The trial court is in a better position to assess the quality of legal representation than we are on appeal. *Dodson*, *supra*.

*Ratchford v. State*, 357 Ark. 27, 31, 159 S.W.3d 304, 306 (2004).

Further, to compound the flaw in the dissenting opinions, even if the claims were ruled upon, both dissenting opinions make an unprecedented leap and conclude that Anita and Chris both satisfied the *Strickland* standard and received ineffective assistance of counsel. Justice's Danielson's dissent states:

> Applying the first prong of the *Strickland* standard to this case, I would hold that both Chris and Anita have demonstrated deficient performance on the part of their attorneys by their failure to advise them of their right to appeal the adjudication order.
>
> . . .
>
> Because Anita and Chris were not advised of their right to appeal, their attorneys' performance was deficient; therefore, the first prong of the *Strickland* standard has been met.
>
> Turning to the second prong of the *Strickland* standard, I would hold that Anita's and Chris's counsels' failure to advise them of their right to appeal the adjudication order prejudiced them to the extent that each was deprived of a fair trial.
>
> Because Chris and Anita were not advised of their rights to appeal the adjudication order, they are now precluded from asserting error, which has clearly prejudiced them to the extent that they did not receive a fair trial.

However, despite the findings of fact contained in the dissenting opinions, other than Anita

Cite as 2016 Ark. 231

II. *Anita's Remaining Points on Appeal*

A. Recusal

For her second point on appeal, Anita contends that the circuit court abused its discretion when it denied Anita's motion for judicial recusal. Anita asserts that the "trial court systematically interfered with [Anita's] ability to present a defense to the allegations below and communicated bias by insulting [Anita's] counsel in open court." Anita points to four instances of error by the circuit court:

(1)    The circuit court's ruling that her refusal to undergo court-ordered psychological testing and counseling by claiming silence under the 5th amendment was relevant in deciding to terminate her parental rights;

(2)    Prohibiting her from introducing evidence at the termination hearing pertaining to the allegations that Chris had sexually abused the children;

(3)    Overruling her motion for directed verdict on adoptability; and

(4)    Unfairly controlling the proceedings by objecting on behalf of the State, requiring Appellant to state objections with specificity, overruling motions for 54(b) certificates and summarily ruling on the issue of ineffective assistance of counsel.

Regarding our standard of review in recusal matters, in *Manila School Dist. No. 15 v. Wagner*, 357 Ark. 20, 25, 159 S.W.3d 285, 290 (2004), we explained that a trial judge has a

---

and Chris's allegations in their brief that they were not informed of their right to appeal the adjudication hearing, the 675 pages of the record do not contain a single word to support the finding that Anita and Chris were not advised of their right to appeal the adjudication hearing. A careful review of the record demonstrates that the record is absolutely devoid of any evidence to support the Taffners' bare allegations. In fact, the circuit court stated, "as whether or not their attorneys advised them of their right to appeal, I don't know what they talked about in private with their lawyers." Indeed, there was no way the circuit court could have known, because absolutely no evidence was presented concerning the issue. Accordingly, without evidence from the record before us, the dissenting justices have simply adopted Chris's brief and created facts out of whole cloth to support their contentions.

SLIP OPINION

duty not to recuse from a case where no prejudice exists. Thus, if there is no valid reason for the judge to disqualify himself or herself, he or she has a duty to remain on a case.

Anita contends that the circuit court indicated bias by "systematically interfering with Appellant's ability to present her case" and by insulting appellant's attorney in open court. Anita further contends that the rulings indicate bias by the circuit court and requests that we "find that the court below abused [its] discretion in refusing to recuse, and reverse and remand for proceedings with a different judge."

Canon 3E(1) of the Code of Judicial Conduct, requires a judge to recuse from cases in which his or her impartiality might reasonably be questioned. Additionally, there is a presumption of impartiality, and the party seeking disqualification bears the burden of proving otherwise. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996). The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996). "Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge which will cause us to reverse his or her refusal to recuse." *Winn v. State*, 345 Ark. 541, 550, 49 S.W.3d 635, 641 (citing *Noland*, 326 Ark. 617, 932 S.W.2d 341). The mere fact of adverse rulings is not enough to demonstrate bias. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999).

Accordingly, we must determine whether Anita demonstrated evidence of bias sufficient to warrant recusal of the circuit court judge. In this case, Anita has not presented

evidence of bias on the part of the judge. Instead, Anita has simply made bare allegations. In fact, the only comment Anita can point to that suggests any bias on the part of the judge is that, following a witness's reference to the – male – attorney as "ma'am," the judge commented, "That's all right. He's been called worse than that." This remark does not demonstrate a personal prejudice against Anita or bias by the trial court. *See Daniels v. State*, 2013 Ark. 208, at 2. Because adverse rulings alone are not sufficient to show bias, Anita's argument must fail. *See Brown v. State*, 2012 Ark. 399. Accordingly, based on our review of the record and the discussion above, we affirm the circuit court's denial of Anita's motion for recusal.

### III. Confrontation of Witnesses

For her final point on appeal, Anita asserts that she was deprived of her Sixth Amendment right to confront witnesses because the circuit court allowed witnesses to testify as to the hearsay statements of B.T. and K.T. regarding the allegations of sexual abuse. Specifically, Anita asserts that it was clearly erroneous for the circuit court to deny Anita her right to confront the children on these allegations — "by doing this, the trial court improperly outsourced her duty to render a fair and independent judgment onto criminal investigators."

The Sixth Amendment provides: In all *criminal* prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. The United State Supreme Court has held that "the sixth amendment relates to a prosecution of an accused person which is technically criminal in its nature." *United States v. Zucker*, 161 U.S. 475, 481 (1896).

Accordingly, the Sixth Amendment guarantee applies to criminal prosecutions. Anita requests that this court expand the rule to apply in parental rights termination cases. We decline Anita's invitation to expand the Sixth Amendment right of confrontation to termination cases and affirm the circuit court on this point.

Affirmed.

DANIELSON and HART, JJ., dissent.

**RHONDA K. WOOD, Justice, concurring.** I join the majority. I write separately because I would hold that appellants did not raise their ineffective-assistance-of-counsel claims in a timely manner. In addition, I encourage the bench and bar to reexamine how we address ineffective-assistance claims in dependency-neglect cases.

The parents' mechanism for relief from the adjudication order due to ineffective assistance of counsel, as the majority states, is Rule 60 of the Arkansas Rules of Civil Procedure. It provides, in relevant part, as follows: "to prevent the miscarriage of justice, the court may modify or vacate a judgment . . . on motion of the court or any party . . . within ninety days." Ark. R. Civ. P. 60(a) (2015).

In this case, the parents alleged that they received ineffective assistance of counsel at the adjudication hearing. That hearing was on February 18, 2015, and the order was filed that same day. Anita Taffner first raised the argument that her counsel was ineffective on June 19, 2015, in her response to the Department's petition to terminate her parental rights.[1] Chris

---

[1] On August 13, 2015, Anita also filed a separate "motion for a finding that the adjudication was not a meaningful hearing." This supports the majority's holding that while the court ruled on this second motion, the ineffective-assistance claim was separate and distinct.

SLIP OPINION

Taffner first raised the argument on June 19, 2015, in his motion for a new lawyer. Both of these motions were untimely because they were made more than four months after the adjudication order had been entered. The circuit court therefore lost jurisdiction to modify the adjudication order because more than ninety days had passed. *See In re W.L.*, 2015 Ark. 289, at 10–11, 467 S.W.3d 129, 135.

Ineffective-assistance claims must be timely raised. Nowhere is timeliness more important than in dependency-neglect cases. In these cases, we protect the fundamental rights of the parents, but the primary consideration is the best interest of the child. *See Dinkins v. Ark. Dep't of Human Servs* ., 344 Ark. 207, 40 S.W.3d 286 (2001); Ark. Code Ann. § 9-27-302(2)(B). Permanency is a vital component of protecting the best interest of the child. Ark. Code Ann. § 9-27-341(a)(3) (stating that the intent of termination of parental rights is to provide permanency when returning the child to his parents is contrary to the his best interest). This is why, for example, we adopted Supreme Court Rule 6-9, which provides for expedited appeals in dependency-neglect cases. Ark. Sup. Ct. R. 6-9(j) ("Dependency-neglect proceedings shall be prioritized on the calendar of the appellate court."). We want the children who have been adopted or placed in foster care to know their permanent status rather than deal with the uncertainty of lengthy appeals.

Once a party raises a timely claim for ineffective assistance of counsel, the circuit court is duty-bound to consider and rule on the issue. In *Jones*, this court created confusion for practitioners and circuit courts by adopting the *Strickland* standard. *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005). In *Jones* we declined to address an ineffective-assistance-of-counsel claim; nonetheless, the court went on to adopt the *Strickland*

standard. Because the court did not reach the merits in *Jones*, the discussion regarding ineffective assistance of counsel is obiter dicta. Obiter dicta is defined as "a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedent ill." *Black's Law Dictionary*, 1102 (8th ed. 2004).

In *Nashville Livestock Commission v. Cox*, 302 Ark. 69, 76, 787 S.W.2d 664, 668 (1990), we addressed obiter dicta and explained that it is "a remark made, or opinion expressed, by a judge, in his decision upon a cause, 'by the way,' that is, incidentally or collaterally, and not directly upon the question before him. . . . Such are not binding precedent." Because the claim for ineffective assistance was not squarely before the *Jones* court, the court's the discussion and application of the *Strickland* standard is dicta and has no precedential value. What's more, the court failed to appreciate the practical effects of adopting the *Strickland* standard, which, in my view, is ill-suited for dependency-neglect cases .

Because the question regarding the appropriate standard is again not squarely before this court, we cannot adopt a standard. Therefore, I encourage circuit courts to look at how other states evaluate these claims. *E.g.*, Susan Calkins, *Ineffective Assistance of Counsel in Parental-Rights Termination Cases: The Challenge for Appellate Courts* , 6 J. App. Prac. & Process 179 (2004); *see also In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016). For example, the Oregon Supreme Court has adopted a fundamental-fairness standard. *See State ex rel. Juvenile Dep't of Multnomah Cty. v. Geist*, 796 P.2d 1193 (Or. 1990). First, that court found "no compelling reason that the same standards applied in adult criminal cases also should be applied in juvenile cases." *Id*. at 1202. Second, the court explained that the fundamental-

fairness standard "emphasizes fact-finding procedures [like] . . . notice, adequate counsel, confrontation, cross-examination, and standards of proof." *Id*. at 1203.

Applying this standard, we could easily affirm the ruling of the circuit court, which essentially applied the fundamental-fairness standard. The court found that the Taffners had free and appointed attorneys; these attorneys had the opportunity to, and did, cross-examine witnesses; and there was an extensive hearing that the Taffners attended. Accordingly, the court found that "the adjudication hearing was a meaningful hearing." The court was able to implement this standard easily. If we were to adopt the fundamental-fairness standard, there would be no basis, as the dissenting opinions suggest, to reverse and remand. That remedy would only further prolong the dependency-neglect case and could damage the children. *See Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1040 (Ind. 2004) ("Due to the immeasurable damage a child may suffer amidst the uncertainty that comes with such collateral attacks, it is in the child's best interest and overall well being to limit the potential for years of litigation and instability."). In the future, this court and other participants in dependency-neglect cases should take a hard look at this issue. We should adopt a standard that properly balances the parent's rights with the children's best interest.

**PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.** I agree with the majority's holdings on the issues in this case with the exception of the issue of ineffective assistance of counsel. I would reverse the circuit court's order terminating parental rights and remand this case to the circuit court for a new adjudication hearing.

In *Jones v. Arkansas Department of Human Services*, 361 Ark. 164, 205 S.W.3d 778 (2005), this court held that, as a matter of law, the right to counsel in parental-termination

cases includes the right to effective counsel. We adopted the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), for determining whether counsel for parents performed ineffectively in termination proceedings. As in a criminal case, applying the two-prong *Strickland* test to a termination-of-parental-rights case requires the parent to prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the parent to the extent of depriving him or her of a fair trial. *See Jones*, 361 Ark. 164, 205 S.W.3d 778.

Justice Wood's concurring opinion asserts the discussion in *Jones* regarding ineffective-assistance-of-counsel claims is obiter dicta and has no precedential value. *Black's Law Dictionary* 1240 (10th ed. 2014) defines "obiter dictum" as follows:

> A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). . . .

> Strictly speaking, an "obiter dictum" is a remark made or opinion expressed by a judge, in his decision upon a cause, "by the way"—that is, incidentally or collaterally, and not directly upon the question before the court; or it is any statement of law enunciated by the judge or court merely by way of illustration, argument, analogy, or suggestion.

(Quoting William M. Lile et al., *Brief Making and the Use of Law Books* 304 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914)). This court in *Jones* expressly adopted the *Strickland* test for ineffective-assistance-of-counsel claims in termination-of-parental-rights cases. This holding was not merely a comment or remark expressed by a judge "by the way." Even though we did not reach the merits of the ineffective-assistance-of-counsel claim in *Jones* because it was not raised in the circuit court or ruled upon, the issue of ineffective-assistance-of-counsel claims in termination cases was directly before this court. The *Jones* opinion

SLIP OPINION

included a thorough discussion of Arkansas Code Annotated section 9-27-316(h) (Repl. 2002) (which provides for a parent's right to counsel in all dependency-neglect proceedings), decisions from other jurisdictions on the ineffective-assistance-of-counsel issue, and the similarities between criminal cases and dependency-neglect cases. Therefore, our holdings in *Jones* regarding the availability of ineffective-assistance-of-counsel claims and the application of the *Strickland* standard are not obiter dicta but are legal precedent that should be applied in this case.

The majority further asserts that the ineffective-assistance-of-counsel claims in the present case were not developed or ruled upon, and therefore we cannot reach them on appeal. I disagree. Both Chris and Anita filed motions claiming ineffective assistance of counsel and then argued those motions at the termination hearing. The circuit court denied these claims when it found that there was a meaningful hearing:

> Both Mr. and Ms. Taffner's attorney had full opportunity to cross examine all the witnesses and did so. That hearing went on for a really, really long time. They had [the] right to attorneys. Free attorneys were appointed to them. They had the right for discovery with – that was something they could have done. The attorneys did make objections throughout that hearing, whether or not [appellants] think they were proper objections or not, it's not for me to decide. Obviously, there's a transcript. As far as whether or not their attorneys advised them of their right to appeal, I don't know what they talked about in private with their lawyers.

I would hold that the ineffective-assistance-of-counsel claims were developed and ruled upon and that we can reach them on appeal.

Applying the first prong of the *Strickland* standard to this case, I would hold that both Chris and Anita have demonstrated deficient performance on the part of their attorneys by their failure to advise them of their right to appeal the adjudication order. Both Chris and

Anita filed motions and argued at the termination hearing that had they been advised of their right to appeal the adjudication order, they would have done so.

Moreover, in making its ruling that the adjudication hearing was a "meaningful hearing," the circuit court considered the fact that the adjudication was not appealed, stating that

> both defendants were represented by counsel and had full opportunity for cross-examination of witnesses – an opportunity of which they did avail themselves. The Court further finds that the Adjudication order was not appealed.

In dependency-neglect cases, "[t]rial counsel shall explain to his/her client all rights regarding any possible appeal, including deadlines, the merits, and likelihood of success on appeal." Ark. Sup. Ct. R. 6-10(a) (2015). Because Anita and Chris were not advised of their right to appeal, their attorneys' performance was deficient; therefore, the first prong of the *Strickland* standard has been met.

Turning to the second prong of the *Strickland* standard, I would hold that Anita's and Chris's counsels' failure to advise them of their right to appeal the adjudication order prejudiced them to the extent that each was deprived of a fair trial. An adjudication order is an appealable order in a dependency-neglect proceeding. Ark. Sup. Ct. R. 6-9(a)(1)(A) (2015). In termination cases, a challenge to a finding of aggravated circumstances must be made, if at all, in an appeal from the adjudication order. *Holloway v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 458, 468 S.W.3d 805 (citing *Willingham v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 568; *Hannah v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 502). If a party fails to appeal from an adjudication order in which an aggravated-circumstances finding is made, the party is precluded from asserting error with respect to that finding on appeal from

an order terminating parental rights. *Holloway*, 2015 Ark. App. 458, 468 S.W.3d 805 (citing *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 791, 387 S.W.3d 311; *Krass v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 245, 306 S.W.3d 14).

The dependency-neglect petition did not contain allegations of aggravated circumstances. At the adjudication hearing, counsel for Anita, Chris, DHS, and the attorney ad litem stated that all parties agreed to a finding of dependency-neglect based on the stipulation of certain facts. Despite the parties' agreement, the circuit court decided to conduct a full hearing and ruled that there were aggravated circumstances. While the original goal of the case was reunification, the unexpected manner in which the adjudication hearing was conducted and the finding of aggravated circumstances resulted in the goal being changed to adoption. By the time Chris and Anita reached the termination hearing, all previous hearings and orders of the circuit court had been tainted by the adjudication hearing.

Because Chris and Anita were not advised of their rights to appeal the adjudication order, they are now precluded from asserting error, which has clearly prejudiced them to the extent that they did not receive a fair trial. Therefore, I would hold that both prongs of the *Strickland* test have been met in this case. Accordingly, I would reverse and remand for a new adjudication hearing. Furthermore, because ineffective assistance of counsel in one stage of a dependency-neglect proceeding can affect and prejudice the parties at each subsequent stage, I would refer this case to the appropriate committee to work with the civil practice committee to implement rules governing the filing of ineffective-assistance-of-counsel claims in these cases.

**JOSEPHINE LINKER HART, Justice, dissenting.** I respectfully dissent. The primary purpose of this court—arguably, the only purpose—is to safeguard the constitutional right of the citizens of this state to due process of law. The myriad of individual tasks that we perform, from issuing extraordinary writs to statutory construction, are only tools to help us translate the intangible concept of due process into practical mechanisms for resolving a controversy in a just manner. In the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court stated that the essence of due process is a fair trial, which it defined as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." By that definition, the Taffners, especially Anita Taffner, did not get a fair trial at the adjudication hearing. That hearing ultimately had a disproportionate effect on this case because the circuit judge used the manifestly erroneous rulings that she made to support her decision at the termination-of-parental-rights hearing.

The reasons why the Taffners were denied their constitutional right to due process are twofold: the circuit judge failed to act impartially, and the Taffners' trial counsel provided ineffective assistance by failing to at least preserve the issue, perfect an appeal, and present it to an appellate court. Both of these issues were raised below and are before us on appeal. While I am mindful that neither issue has a weighty body of law compelling this court to rule in the Taffners' favor, in my view, the very reason for this court's existence is incompatible with any other holding.

I am mindful that heinous allegations were leveled against Chris Taffner. However, if we are properly doing our job, we cannot be swayed by the awful allegation, nor can we

justify our failure to apply the law by "erring on the side of the children." Our job is to make sure that the well-established legal procedures and formalities are followed, i.e., that the respondents received due process. In my view, the basic requirements of due process were not afforded the Taffners. I will address the specific issues of circuit-judge bias and ineffective assistance of counsel in turn.

The issue of the circuit judge's bias is couched in terms of her refusal to disqualify herself. The majority shrugs off this weighty issue as complaining about a "a few adverse rulings." The majority completely mischaracterizes Anita Taffner's argument. Anita identified as "objective indications of bias" the circuit judge's "systematically interfering with [her] ability to present her case." Anita cites the following examples.

(1) Penalizing her for invoking her Fifth Amendment right to silence. Anita refused to submit to a psychological evaluation and to receive psychiatric counseling because she was concerned with the pending criminal case. Often in dependancy-neglect cases it is apparent that referring to psychological evaluations as "reunification services" is a misnomer. There is no doctor/patient confidentiality involved with either "service," and even when counseling appears to be helpful, if complete remission is not accomplished in less than a year, insufficient progress is often cited as a reason for terminating parental rights. Here, in the case of Anita, there was never an allegation that Anita harmed the children in any way or was even aware of any suspected abuse prior to the allegations being presented to state officials. However, Anita *was* aware that her fourteen-year-old adopted daughter had made *false* allegations of sexual abuse against her biological father before the Taffners adopted her.

(2) Prohibiting her from introducing evidence of Chris's innocence after the adjudication hearing, calling it res judicata. This was a manifestly incorrect ruling because it was not a collateral attack on a judgment but a continuing proceeding in the same court. However, that is far from the whole story.

Prior to the start of the hearing, both parent counsel and counsel for ADHS had agreed to a dependency-neglect adjudication on stipulated facts,[2] a finding that required only a preponderance of the evidence. ADHS had informed parent counsel that it intended to call only the case worker to testify about how the children were doing in care. The circuit judge rejected the stipulation to the adjudication unless the parties were willing to stipulate by "clear and convincing evidence" so that she could enter an aggravated-circumstances finding. The circuit judge noted that even CACD findings were only by a preponderance of the evidence. Anita's trial counsel objected; Chris's was silent. The circuit judge then took over the hearing. I note that by forcing a trial on issues that were not contemplated by the parties is a clear denial of basic due process in that the hearing was directed to issues that were not defined in advance of the proceeding. *See Strickland, supra.*

---

[2]At the adjudication hearing, the parties stipulated that:
1. The five children were previously in foster care and were adopted by Chris and Anita.
2. Chris was arrested for rape and three counts of second-degree sexual assault involving BT.
3. Arkansas Crimes Against Children Division (CACD) found "true" against Chris with BT as the victim of sexual contact, oral sex, and penetration sex.
4. Criminal charges are pending.
5. Anita continues to live with Chris as his wife.
6. Anita stated that she believes and supports Chris. Based on that, the children cannot return to either parent at this time.

`Caseworker Cindy Edrington was called. She stated that there was a "true" finding by CACD. However, Edrington recommended services for Anita. The circuit judge insisted that Karis Chastain, a CACD investigator, testify. Chastain stated that she had interviewed BT and KT twice, and she felt "that BT made a credible statement and disclosure." In her first interview with KT, KT made no disclosure but later said she had been "touched" by Chris. She made her findings against Chris. She stated that Anita "told me that she would choose to support her husband." Nonetheless, Chastain admitted that there was "no true findings" against Anita.

Monika Isenhower, Washington County ADHS investigator for child abuse and neglect, was called next. She testified that she was assigned to do a "safety report." She stated that she reported that Anita was "allowing her husband in the home." The circuit judge interrupted Anita's trial counsel's attempt to examine the witness.

Finally, the circuit judge required Detective Bret Hagan to testify. He stated that he was assigned to investigate the Taffners. Hagan further testified that he "beleive[d] that BT and KT made credible disclosures of sexual abuse by Chris." He claimed he collected "physical evidence" that he "believe[d] corroborates the story of BT and KT." Hagan also recalled that when he spoke with Anita, "she indicated that she believes her husband." Hagan's testimony was not probed by either Anita's or Chris's trial counsel, and no indication of what "physical evidence" Hagan collected appears in the record. That fact certainly begs the question of what, if anything, he could have collected since KT's allegation was only inappropriate touching, and BT made her disclosure at least several days, if not longer, after

her alleged abuse. Thus, the only evidence produced was testimonial hearsay, delivered in a conclusory fashion.

The trial counsel for Anita and Chris called no witnesses. Based on her own advocacy, the circuit judge made an aggravated-circumstances finding against both parents. This finding against Anita was made despite the fact that CACD investigator Karisa Chastain testified that after her investigation, she found "no true findings against her." I am mindful that several of the witnesses called by the circuit judge recounted that the day the allegations were made against Chris—indeed within minutes of learning of the allegations—Anita stated that she would believe the word of her husband over her teenage child, who had made similar unproven allegations against her natural father. However, but for the circuit judge's bias, a "no true findings" conclusion to an investigation would not support an aggravated-circumstances finding.

(3) The circuit judge "banned" the presence of the children at the adjudication hearing. Although the circuit judge noted that the children's ages ranged from fourteen to ten, prior to the adjudication, the circuit judge ordered that the children not appear in court. She then called the investigators and accepted testimonial hearsay as the sole basis for her ruling. The Taffners were thus denied the opportunity to test the veracity of the statements made by R.T. and K.T. through cross-examination. In *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny, the introduction of testimonial hearsay is banned. This is one more example of the circuit judge denying the Taffners their right to due process.

I am mindful that *Crawford* is a criminal case, however, this court's previous holdings have extended criminal-trial Sixth Amendment protections to dependency-neglect

proceedings. *See, e.g., Jones, supra.* The right to parent one's children is a liberty interest that is worthy of such protection. *See Troxel v. Granville,* 530 U.S. 57 (2000). The effect of excluding the children from the proceedings meant that key evidence could not be subjected to "adversarial testing." Once again, the circuit judge's bias translated into a direct deprivation of due process for the Taffners. *See Strickland, supra.*

(4) The circuit court abused its discretion by overruling appellant's motion for a directed verdict. This argument concerns the circuit judge's performance in the termination hearing. There was scant evidence of the Taffner children's adoptability and considerable evidence weighing against it. The children are an older-sibling group of five, all born between January 2001 and February 2005. They had disrupted several foster-home placements. The oldest child had made a previous false sexual-abuse allegation against her biological father that was proved false. Caseworker Edrington testified that the abuse allegations would have to be disclosed to potential adoptive parents, and she stated that, at that time, ADHS was not looking for an adoptive home for the children.

Once again, the circuit judge intervened in the proceedings, which can only be characterized as "her case." The circuit judge supplied the missing proof of the children's adoptability, finding them "delightful." There is no indication in the record that the children actually appeared for any of the proceedings. Accordingly, there was no way to probe the basis for the circuit judge's "expert" testimony, which proved conclusive on this issue.

The circuit judge's conduct and comments demonstrated her bias. The circuit judge actively took over the case. She conducted the adjudication hearing nearly single-handedly. She decided the issues to be tried and the witnesses to be called, and of course, made all the

findings. At the termination hearing, she eviscerated the Taffners' case and served as a key witness. As I stated previously, the *Strickland* Court stated that the essence of due process is a fair trial, which it defined as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id.* The Taffners were ambushed by the circuit judge when the issues changed from what the parties' stipulations to a full hearing in which the circuit judge had ordered that the key witnesses not be brought to court. Thus, the evidence of alleged abuse was not subjected to adversarial testing of the most important witnesses, BT and KT, were excluded from all the proceedings by the circuit judge. When the Taffners' trial counsel did object, their objections were overruled—presumably the "few adverse rulings" that the majority acknowledges. Accordingly, the Taffners did not receive due process—just process.

I also believe that the Taffners received ineffective assistance of counsel at the adjudication hearing. It is true, as Anita argues, that her first trial counsel, Sarah Williamson, failed to engage in discovery and failed to call witnesses, but most important, failed to inform her of her appeal rights and failed to perfect her appeal. Given the way the circuit judge handled the adjudication hearing, it is apparent that no lawyer could have produced a different outcome. However, if the circuit judge's actions had been timely appealed, it is inconceivable that any appellate court would have affirmed.

While in the history of this court's Rule 37 jurisprudence few inmates have received postconviction relief, a notable exception is *Reynolds v. State*, 341 Ark. 387, 18 S.W.3d 331 (2000). In that case, the *Reynolds* court reversed the denial of an inmate's Rule 37 petition and ordered a new trial because his trial counsel failed to object to a manifestly incorrect jury

instruction, which of course failed to preserve the issue for appeal. *Reynolds* is analogous because the circuit judge's conduct was so manifestly biased and so in excess of her authority that the adjudication order would certainly have been reversed on appeal.

I am mindful that the majority believes that this court is somehow prevented from addressing the ineffective-assistance-of-counsel claim because it was not timely raised pursuant to Rule 60 of the Arkansas Rules of Civil Procedure or because it was not fully developed in the circuit court or because it was not ruled on in the circuit court. None of these procedural bars are compelling.

First, the ninety-day limitation in Rule 60(a) relates to the circuit court's loss of jurisdiction to "modify or vacate a judgment, order or decree." Ark. R. Civ. P. 60(a); *see In re Guardianship of W.L.*, 2015 Ark. 289, 467 S.W.3d 129. While a dependency-neglect adjudication is promulgated by an "order," by the very nature of the proceedings, the circuit court does not lose jurisdiction. On the contrary, the adjudication means that the circuit court will be exercising continuing jurisdiction over the minor child and the parent or parents. An adjudication order is more like an injunction or temporary restraining order, which is subject to being dissolved or modified by the circuit court upon a proper showing, and therefore not subject to the ninety-day limitation. *See* 2 David Newbern & Watkins, *Civil Practice and Procedure* § 20:4 (4th ed.).

As for whether the issue of ineffectiveness of counsel was "developed," it was brought before the circuit court as part of Anita's response to the petition to terminate her parental rights. In the brief accompanying the pleading, Anita asserted that her first trial counsel was ineffective because she failed to move for a continuance to conduct discovery and, more

important, failed to explain her right to appeal. Those deficiencies correspond to the *Strickland* performance prong. The brief also stated that her counsel's deficient performance rendered the adjudication proceeding "not a meaningful hearing," which corresponds to the *Strickland* prejudice prong. Chris raised the ineffectiveness of his counsel after he petitioned for a new lawyer after the adjudication hearing. In pertinent part he stated in his pro se filing,

> 3. She has poorly represented me from the beginning. She was not prepared for the hearing that was held on February 18 of this year. She called no witnesses for me and she did not question any witness who testified. She did not object to any testimony. She did not investigate any of the stories against me and did not interview anyone other than talk to me. She did not tell me that I had the right to appeal the decision or discuss with me any options like filing a motion for a new trial I might have after the decision from the February 18 hearing.

> 4. She made no effort to investigate the stories against me or obtain any records or reports DHS had before the February 18 hearing. The documents that DHS had that the court did order delivered to my attorney were not provided until after the hearing, and my attorney made no effort to postphone the hearing so we could get the information to be prepared for the hearing.

As noted previously, the motion was granted and Chris was appointed new trial counsel before the termination hearing. Accordingly, the circuit court was sufficiently apprised of the issues.

Finally, the circuit court ruled on the ineffective-assistance-of-counsel claim, however reluctantly. It denied the Taffners a hearing on the issue and addressed it only because Anita's trial counsel brought it up in his closing argument at the close of the termination proceeding. The circuit judge made her ruling as she categorically rejected the Taffners' contention that the adjudication hearing was not "meaningful." Her exact words are as follows:

> The Taffners raise the issue of ineffective assistance of counsel. The Taffners were both appointed free attorneys for them. There was testimony at the hearing of Detective Bret Hagan, the Washington County Sheriff's Office, detective, Karis

Chastain, the CACD investigator also testified. Based on their testimony, I adjudicated the children to be dependent-neglected. The Taffners had full opportunity to cross-examine all the witnesses and did so. They had a right to discovery with—that was something they could have done. The attorneys made objections throughout that hearing, whether or not Mr. Kezhaya and Ms. Tosh[3] think they were proper objections or not, it's not for me to decide. Obviously, there's a transcript. And as far as whether or not their attorneys advised them of their right to appeal, I don't know what they talked about in private with their lawyers. I find that the adjudication hearing was a meaningful hearing.

In light of the above-quoted findings by the circuit judge, I am puzzled by the majority's insistence that the phrase "that's not for me to decide" was the circuit judge's entire ruling on the Taffners' ineffective-assistance-of-counsel claim. In my view, the foregoing shows a detailed ruling. The fact that the ruling contained errors of both fact and law does not detract from the unassailable fact that the ruling was made. The appellate courts of this state exist to reverse manifestly incorrect rulings—not to sidestep them or pretend that they do not exist.

I would reverse and remand this case and order that it be heard before an unbiased judge.

*Kezhaya Law PLLC*, by: *Matthew A. Kezhaya*, for appellant Anita Taffner.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[3] The Taffners were given replacement counsel after the adjudication hearing.